IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DARIUS RAY JORDAN, | : | |
| Plaintiff, | : | |
| v. | : | NO. 5:12-cv-205 (CAR) (CHW) |
| TOMMY TREMBLE, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Tommy Tremble, Marvin Smith and Eueila Durden. (Doc. 14). In their Motion, the Defendants raise the affirmative defense of failure to exhaust.[1] *Jones v. Bock*, 549 U.S. 199, 216 (2007). It is **RECOMMENDED** that this claim be considered separately and construed as a Motion to Dismiss.[2] *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). Furthermore, because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that Plaintiff's case be **DISMISSED**.

## BACKGROUND

Plaintiff's § 1983 action arises out of a December 5, 2011 stabbing at Hancock State Prison. Plaintiff claims that Defendants Tremble, Smith, and Durden failed to protect Plaintiff from harm caused by another inmate, Marcus Fennell. The relevant facts are as follows:

---

[1] In accordance with F.R.C.P. 8(c), the Defendants preserved the defense of failure to exhaust in their Answer. (Doc. 10, p. 3).

[2] An exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008).

1

On November 25, 2011, Hancock State Prison ("HSP") was placed in a 21-day "lockdown" due to "a number of incidents of disciplinary infractions." (Doc. 14-1, p. 5). A "lockdown" means that all prisoners are confined to their cells, except to "resume normal activity such as taking showers." (*Id.,* p. 6). A "lockdown" also means that, when out of their cells, prisoners are "always in the presence of correctional officers on the floor . . . as well as in the control booth." (*Id.*).

On November 26, while HSP was still in "lockdown," Plaintiff and another prisoner, Marcus Fennell, got into a "debate" over who would enter the shower first. (*Id.*). No correctional officers were on the floor at the time. (*Id.*). As the argument escalated, Fennell displayed a homemade knife and advanced toward Plaintiff with it. (*Id.*, p. 7). Plaintiff retreated to his cell, locking the door for protection, and Fennell followed, shouting threats. (*Id.*). None of the Defendants witnessed the November 26 incident. (*Id.*, p. 8).

Plaintiff claims that he reported the November 26 incident to each of the Defendants on November 27. (*Id.*, p. 9-10). The Defendants, however, all deny that they were made aware of November 26 incident. (Doc. 14-7, p. 5; Doc. 14-8, p. 5; Doc. 14-9, p. 4).

From November 27 through December 4, Plaintiff's cell-block remained on "lockdown" and was also subject to "shakedowns"—cell searches to "insure that no inmate had any unlawful contraband, [and] in particular, any item that could be used as a weapon." (Doc. 14-2, p. 7). Shakedowns occurred "throughout" Plaintiff's cell-block, but it is not clear whether Fennell's cell was searched. (Doc. 14-1, p. 11).

During this time, Plaintiff frequently heard Fennell shouting threats, but Plaintiff did not report these threats to any of the Defendants. (*Id.*). It is not clear whether the Defendants overheard Fennell, or, if they did overhear, whether they understood, because Fennell referred to

Plaintiff using a nickname: "Whody." (Doc. 14-1, p. 11). Plaintiff claims that, on December 5, he (1) told Defendant Durden about Fennell's continuing threats; and (2) told Defendants Smith and Tremble that he feared for his life and asked to be moved. (Doc. 14-3, p. 24). The Defendants all deny that Plaintiff "ever told [them] of any concerns or incident or issue with inmate Fennell." (Doc. 14-2, pp. 4-6, n.4, n.6, n.9).

On December 5, Defendant Durden noticed water running from the toilet in Plaintiff's cell on the second floor of his cell-block. (Doc. 14-1, p. 12). Plaintiff admits that he and his cellmate flushed trash, causing their toilet to clog and overflow. (*Id.*, pp. 12-13). In response, Defendant Durden radioed for assistance, summoning her supervisor, Lieutenant Sheila Clark, and also summoning Defendants Smith and Tremble. (*Id.*). Defendant Smith opened Plaintiff's cell door so that Plaintiff and his cellmate could clean up the running water. (*Id.*). Plaintiff twice ventured down from his cell on the second floor to the first floor "mop closet," first to get a mop, and then to get a bucket. (*Id.*, pp. 13-14). On his second trip, Plaintiff alleges that Defendant Tremble told Defendant Durden to open the door to Marcus Fennell's first-floor cell. (Doc. 14-3, p. 26). The Defendants claim that water from Plaintiff's cell was flowing into Fennell's cell, and that Fennell, like Plaintiff, was released to clean. (Doc. 14-7, p. 7; Doc. 14-8, pp. 8-9; Doc. 14-9, p. 6). Plaintiff denies this fact. (Doc. 16-1, p. 9).

Soon after Plaintiff and Fennell were released, a fight ensued. Plaintiff claims that he "was not armed, was not the aggressor, and did not engage in mutual combat with inmate Fennel[l]." (*Id.*, p. 10). Fennell was armed with his homemade knife, and the fight left Plaintiff with "a ¼ inch cut on the top of his head, a deep puncture wound to his right upper abdomen, a 1 inch laceration to his left forearm and a puncture wound to his left upper shoulder." (Doc. 14-1, p. 16).

3

## **LEGAL STANDARD**

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is a precondition to litigation, and federal courts may not waive the exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998). Moreover, the Eleventh Circuit has held that the exhaustion of available administrative remedies is mandatory, even when the administrative procedures set forth by a prison are futile or inadequate. *Alexander*, 159 F.3d at 1326.

Because exhaustion is "a matter in abatement and not generally an adjudication on the merits," it is properly the subject of dismissal rather than of summary judgment. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). As such, a motion based on the failure to exhaust should be treated as a motion to dismiss even if raised in the context of a motion for summary judgment. *Id.* As with other issues in abatement, however, courts determining exhaustion may consider facts outside of the pleadings. *Id.* at 1376. Courts may also resolve factual disputes, so long as those disputes do not decide the merits and so long as the parties have a sufficient opportunity to develop a record. *Id.*

When a motion to dismiss is based on the affirmative defense of failure to exhaust, the review of the motion involves a two-step process. See *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, the court looks to the facts alleged in both the motion itself and in the plaintiff's response. *Id.* at 1082. If the alleged facts conflict, the court takes the plaintiff's version of the facts as true. *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the complaint is not

subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

## AVAILABLE ADMINISTRATIVE REMEDIES

During the relevant period, the Georgia Department of Corrections' Standard Operating Procedure ("GDC SOP") set-forth a three-step grieving process, consisting of: (1) the filing of an informal grievance; (2) the filing of a formal grievance; and (3) the filing of an appeal. (Doc. 14-1, pp. 16-17). Only after the termination of a 90-day appeal-review period was the grievance process deemed complete. (*Id.*).

## ANALYSIS

There is no dispute, in Plaintiff's case, as to the facts showing that Plaintiff failed to exhaust his available administrative remedies. All parties agree that, following the December 5 stabbing, Plaintiff was taken to Oconee Regional Medical Center, where he remained hospitalized for six days. (Doc. 16, p. 7). Upon discharge, Plaintiff was taken to the Georgia Diagnostic and Classification Prison (GDCP), where he was temporarily housed in the medical unit. (*Id.*). While at the GDCP, Plaintiff claims to have filed an informal grievance concerning the December 5 stabbing. (*Id.*; Doc. 14-3, p. 32). However, due to his "injuries" and "attendant medications," Plaintiff admits that he "could not file his grievance within the 10-day time limit." (Doc. 16, p. 7). In addition, Plaintiff seemingly failed to file both a formal grievance and an appeal, as required for exhaustion under the GDC SOP. (*Id.*).

At some point, Plaintiff was transferred back to Hancock State Prison where, on January 5, 2012, he filed a second informal grievance. (Doc. 14-1, p. 17). Like his first informal

grievance, Plaintiff's second informal grievance was rejected because it was "filed out of time frame as outlined in policy." (*Id.*). Plaintiff did not file a formal grievance or appeal at Hancock State Prison, and his informal grievance neither requested leave to file out-of-time nor included an explanation for its untimeliness. (*Id.*).

Plaintiff argues, citing *Miller v. Tanner*, 196 F.3d 1190 (11th Cir. 1999), that "a grievance which is terminated at the institutional [level] is deemed exhausted." (Doc. 16, p. 8). In *Miller*, the Eleventh Circuit held that a prisoner did not fail to exhaust his available administrative remedies, despite failing to file an appeal, because the prisoner received a memorandum "unambiguously" telling him that "appeal was futile, even prohibited."[3] *Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999). Plaintiff does not claim to have received a similar response to his informal grievances, and there is no evidence currently before the court suggesting that subsequent steps in the GDC SOP grievance procedure were not "available" to Plaintiff. *See Walker v. Roberson*, 2009 WL 2338035 at *11 (S.D. Ga. July 27, 2009) ("the key inquiry [is] whether administrative remedies were actually 'available'"); *see also Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) ("the modifier 'available' in the PLRA means . . . the possibility of at least some kind of relief"). Moreover, as noted in *Harper v. Jenkin*, if courts were simply to deem untimely grievances "exhausted," "inmates . . . could ignore the PLRA's exhaustion requirement and still gain access to federal court merely by filing an untimely grievance." 179 F.3d 1311, 1312 (11th Cir. 1999). Accordingly, because Plaintiff failed to exhaust all of his available administrative remedies, his case must be dismissed.

---

[3] The memorandum stated: "when any grievance is terminated at the institutional level, you do not have the right to appeal." *Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999).

## **CONCLUSION**

Because Plaintiff failed to exhaust his available administrative remedies prior to filing this lawsuit, it is **RECOMMENDED** that the Defendants' Motion (Doc. 14), as construed, be **GRANTED**, and that Plaintiff's case be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 5th day of December, 2013.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge